Ray LaPIER

v.

**M. L. HOLLIMAN, Superintendent of the Jackson County Board of Education, Horace Sell, Arthur Parr, Jr., Robert Farmer, Otis Hiland, and Ted Cook, Individually and as Members of the Jackson County Board of Education, and The Jackson County Board of Education.**

Civ. No. C80–55G.

United States District Court,
N. D. Georgia,
Gainesville Division.

Dec. 22, 1980.

Robert W. Adamson, John E. Stell, Jr., Russell, McWhorter & Adamson, Winder, Ga., for plaintiff.

Leonard C. Lewellen, Harvey & Lewellen, Jefferson, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

Presently pending in this civil action are the parties' cross-motions for summary judgment. The essential facts are not in dispute. On December 15, 1976, the plaintiff Ray LaPier entered into a contract of employment with the defendant Jackson County Board of Education whereby beginning January 3, 1977, the plaintiff was to serve as the principal of Jackson County Elementary and High School in Braselton, Georgia. This contract was renewed for the 1977–78, 1978–79, and 1979–80 scholastic years. In the spring of 1980, however, the Board decided not to renew his contract as principal of the school for the 1980–81 school term, though it did offer him a job as a physical education instructor. By letter dated April 15, 1980, the defendant M. L. Holliman, superintendent of the Jackson County Schools, notified the plaintiff of the County Board of Education's decision. The plaintiff responded immediately requesting a written statement of the reasons for the Board's decision. Several days later he wrote the defendant M. L. Holliman again, this time to request a hearing. On the advice of counsel, the Board denied the plaintiff's requests for written reasons for his nonrenewal and a hearing and advised him of this decision by letter of May 13, 1980. The sole basis for the Board's rejection of his request was its conclusion that only tenured teachers are entitled to a hearing and that, in its opinion, the plaintiff had not completed the length of service prescribed by Ga.Code Ann. § 32–2103c to acquire tenure.

In commencing this suit and in moving for summary judgment, the plaintiff contends that he was constitutionally entitled to a hearing and a written statement of the reasons for the Board's decision and that, therefore, the Board's refusal offends fifth and fourteenth amendment due process.[1]

---

1. In his complaint the plaintiff includes a claim for the damage to his professional reputation, which might be construed as an allegation of a protected liberty interest, but in his brief he ignores this would-be claim and concentrates instead on the argument that the defendants deprived him of a valuable property interest without due process in violation of the fifth and fourteenth amendments. Even had the plaintiff advanced the liberty interest argument, the court believes that the plaintiff's interest in his reputation was not offended by the defendants'

He finds support for his position in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Roth*, the Supreme Court noted generally that a state statute may create a property interest in continued employment to which constitutional protections attach, such that an individual may not be terminated or discharged without some semblance of due process. *Id.* at 577, 92 S.Ct. at 2709; *accord, Thompson v. Bass*, 616 F.2d 1259, 1264–65 (5th Cir. 1980); *Glenn v. Newman*, 614 F.2d 467, 471–72 (5th Cir. 1980); *Gosney v. Sonora Independent School District*, 603 F.2d 522, 525 (5th Cir. 1979). The plaintiff contends that Ga.Code Ann. § 32–2103c gives rise to such a property interest; it specifies that

> [a]fter a teacher . . . who is employed under a contract for a definite term has been employed for three or more successive school years by the same local board of education, then the nonrenewal of the contract of such teacher or other person or his demotion for the fourth or subsequent years shall be as provided by this section . . . . For purposes of this section, a teacher . . . shall be deemed to have been employed for three successive years where the teacher or employee had already completed two years with the system and while serving under his third successive contract has his contract of employment renewed by the board of education for the fourth consecutive year.

For those individuals satisfying these prerequisites the statute provides for notice and a hearing upon a timely request by the teacher. The plaintiff maintains that by its terms this statute confers upon him and others in his position the legitimate expectation of continued employment required by *Roth*.

The defendants do not dispute that this statute creates a protectable property interest for "tenured" teachers,[2] but they contend that the plaintiff has not served the three consecutive school years the statute requires before these procedural protections are mandated. Under their interpretation of this statute the plaintiff cannot receive credit towards tenure for the half year he served from January 1977 to the end of that school year and, therefore, at the time of the board's decision the plaintiff had not been employed for three or more successive school years, but was merely finishing up his third. Then, the defendants conclude, the Board need only give him notice of its decision by or before April 15, as required by Ga.Code Ann. § 32–2102c.

Before addressing the code sections cited by the parties, the court notes that there is nothing in the fourteenth amendment that would restrict due process protections to tenured teachers; where no formal system of tenure exists, due process may be mandated nonetheless where state rules or understandings between the parties support a claim of entitlement to continued employment. *See McDonald v. Mims*, 577 F.2d 951, 952 (5th Cir. 1978); *Stapp v. Avoyelles Parish School Board*, 545 F.2d 527, 532 (5th Cir. 1977); *Wood v. University of Southern Mississippi*, 539 F.2d 529, 532 (5th Cir. 1976). *See also Siler v. Brady Indepen-*

---

actions. *See, e. g., Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *But see Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (students suspended from school without hearing have protected liberty interest in reputation that such official action offends).

2. It could be argued that this statute only creates procedural protections. *See Hayward v. Henderson*, 623 F.2d 596, 597–98 (9th Cir. 1980); *Wells Fargo Armored Service Corp. v. Georgia Public Service Comm'n*, 547 F.2d 938, 942 (5th Cir. 1977); *Lake Michigan College*

*Federation of Teachers v. Lake Michigan Community College*, 518 F.2d 1091, 1095 (6th Cir. 1975), *cert. denied*, 427 U.S. 904, 96 S.Ct. 3189, 47 L.Ed.2d 1197 (1976). The court concludes, however, that at least implicitly this statute prohibits the nonrenewal of a tenured teacher's contract except for cause, such as is specified in Ga.Code Ann. § 32–2101c, and that, therefore, a tenured teacher has a protectable property interest in his or her job. *See Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Dominy v. Mays*, 150 Ga.App. 187 (1979); *Ransum v. Chattooga County Board of Education*, 144 Ga.App. 783, 242 S.E.2d 374 (1978).

*dent School District,* 553 F.2d 385, 387–88 (5th Cir. 1977) (mere fact that teacher rehired successive years does not create legitimate expectation that will be renewed). When a state provides for tenure by statute, however, courts should address the statutory arguments first, since often the question of de facto tenure will be pretermitted.

Georgia Code section 32–2103c purports to define tenure, but it does not state this definition in the clearest terms. The first sentence could be construed, as the plaintiff insists it should be, to grant tenure to any teacher who has served three successive school years, which the plaintiff has done beginning with his first full year contract in 1977 and ending with the contract for the 1979–1980 school year. Because the local board of education is required by statute to make at least tentative decisions of renewal or nonrenewal for all teachers under a school year contract on or before April 15 of that year, before the end of the present school year, it makes sense to conclude from this first sentence of the statute that a teacher need only be working under his or her third successive school year contract to acquire tenure. Otherwise, the reference to the fourth year contract towards the end of this sentence would be superfluous, since the Board's decision whether to renew the teacher's contract for a fourth year would usually be made before the end of the third school year. The defendants, however, contend that for the purpose of this case the critical language comes at the end of this statute, where it states that

> a teacher or other employee as hereinbefore referred to shall be deemed to have been employed for three successive school years where the teacher or employee had already completed two years with the system and while serving under his third successive contract has his contract of employment renewed by the board of education for the fourth consecutive year.

Ga.Code Ann. § 32–2103c. They argue that this part of the statute sets forth the definitive test for tenure. This interpretation was adopted by the Southern District of Georgia in the only case found by the court

in which the language of section 32–2103c was analyzed closely. Under facts strikingly similar to the ones presented here, the court held in *Willingham v. Carter,* No. CV677–13 (S.D.Ga. Dec. 21, 1977), that a teacher employed by the same school system for three and half years in succession, as was the plaintiff, was not tenured. The court surmised that any teacher must satisfy three threshold conditions before he or she is entitled to tenure: he or she must have completed two years within the system, must be serving under his or her third successive contract, and must be renewed for a fourth consecutive year. Applying this tripartite standard, the court concluded that the plaintiff was not entitled to tenure, since even after casting the plaintiff's argument in its most favorable light, which in that case meant giving him credit for his first half year and computing his years of service from January on, instead of from the following September, he did not satisfy the statute's prerequisites; his contract was renewed but not for a fourth consecutive year.

Applied here, this test would likewise end this plaintiff's bid for statutory tenure. As had the plaintiff in *Willingham,* the plaintiff here has worked for two successive years from January 3, 1977, to January 3, 1979, and was given a contract carrying him through a third successive year ending January 3, 1980, but was not hired for a fourth consecutive year, since the Board decided in April that his contract would not be renewed for the 1980–81 school year. The plaintiff contends, however, that the portion of section 32–2103c relied upon by the defendants and the court in *Willingham* is inapposite, since by the time the Board made its decision he had already served for three successive years and was therefore entitled to the protections guaranteed tenured employees. He argues that this last passage of the statute broadens the definition of tenure to encompass employees who have not completed their third successive year at the time the Board reviews their contracts for possible renewal, but who do receive a contract for a fourth year.

■ Having carefully studied the language of the statute and the arguments made by each side, the court concludes that under section 32–2103c a teacher must either have completed three successive years of employment or have completed two, be finishing a third, and have been offered a contract for a fourth before he or she can acquire tenure and demand the procedural protections afforded by this statute. Therefore, under the court's construction of this statute, unless the plaintiff can receive credit towards tenure for the first half year he was employed, he would not be entitled to tenure under the court's construction of this statute.

■ The court in *Willingham* included a half year in its computations of the plaintiff's length of employment, but only for the sake of argument. The court seemed more inclined to adopt a July 1 to June 30 statutory school year, which would coincide with the fiscal school year. *See* Ga.Code Ann. § 32–658a. Had the plaintiff in *Willingham* been able to satisfy the three conditions only with the inclusion of the half year, it is questionable that the court would have ruled in favor of the plaintiff. The parties refer the court to a number of other sections in the education code in which the term "school year" is defined in various ways and that refer explicitly to teachers "under contract on the beginning day of the current school year." *See, e. g.,* Ga.Code Ann. §§ 32–658a(a) (students 180 day school year and fiscal school year September 1 to July 30), 32–2102c (non-tenured teachers). Section 32–2103c, however, does not define this term and does not refer to any of these other sections in which the term is defined. The section, though, refers explicitly to "school years," which in light of the few statutory definitions of this term is persuasive evidence that the Georgia legislature did not intend to give credit for a half year. The preamble to the statute behind this code section, however, omits the word "school" in defining tenure, stating only that "three years of service with the board of education" is required. 1975 Ga.Laws p. 360. Though the preamble is not a part of the official Act and therefore may not be used to create a discrepancy in the statute, it may be used to divine legislative intent when the text of the statute is ambiguous or misleading. *Thompson v. Eastern Air Lines, Inc.,* 200 Ga. 216, 223, 39 S.E.2d 225 (1946); *Foster v. Brown,* 199 Ga. 444, 450, 34 S.E.2d 530 (1945); *MARTA v. McCain,* 135 Ga.App. 460, 461–62, 218 S.E.2d 122 (1975). Given the absence in the code section of any definition of the term "school year," the preamble may be used to clarify the legislature's intent in prescribing this standard. With this language in mind, the court concludes that the Georgia legislature meant only to require 36 months of continuous service before tenure would be granted a teacher.

Contrary to what the defendants contend, this interpretation of section 32–2103c will not frustrate legislative intent. In enacting this section the legislature intended to establish a fair procedure for the annual review of teachers' performances in the classroom so that only those teachers performing consistently at a level commensurate with state standards would be rehired. By requiring three years of continuous service before tenure was granted, the legislature ensured that the Board would have ample opportunity to observe each teacher. Three years of continued employment, whether the starting point is January or September, gives the Board sufficient time and opportunity to evaluate a teacher's performance. Conversely, the court sees little to be gained by penalizing the plaintiff in the manner suggested by the defendants simply because he was hired to fill a vacancy in the middle of the year. Under the interpretation proposed by the defendants, teachers hired to start in the fall of 1977 would become tenured at the same time as the plaintiff, even though he had a half year more teaching experience in the school system. The court, therefore, concludes that as of January 3, 1980, at which time when the plaintiff had completed three consecutive years in the same school system, he was tenured and was thereby entitled to a hearing and written statements of the reasons for the nonrenewal of his contract. Accordingly, since

undeniably those protections were denied the plaintiff in violation of his statutory and constitutional rights, the court hereby grants the plaintiff's motion for summary judgment and denies the defendants' cross-motion for summary judgment.

The court agrees with the plaintiff that a hearing would be appropriate before any relief is granted. The plaintiff seeks reinstatement and compensatory and punitive damages, plus attorney's fees and costs. In preparing for this hearing the parties are directed to research the question whether under the circumstances reinstatement can be granted the plaintiff. Also, if the plaintiff intends to press for damages from the defendants in their individual capacities, he must introduce evidence of their bad faith at this time. This hearing will be scheduled at the earliest time possible.