## A09A1871. OCCIDENTAL FIRE AND CASUALTY COMPANY OF NORTH CAROLINA, INC. v. JOHNSON et al.

(691 SE2d 589)

PHIPPS, Judge.

In this interlocutory appeal, Occidental Fire and Casualty Company of North Carolina, Inc. challenges the denial of its motion for summary judgment. Occidental maintains that it is not subject to Georgia's direct action statute, OCGA § 46-7-12, which allows plaintiffs to sue directly the insurers of motor carriers. For reasons that follow, we affirm the trial court's ruling.

To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law.[1] We review de novo a trial court's denial of summary judgment, construing the evidence in a light most favorable to the nonmoving party.[2]

So construed, the evidence showed that at about 11:30 p.m. on November 10, 2004, Johnny Johnson sustained fatal injuries when his vehicle collided with a tractor-trailer being driven by Carl Anthony Thomas. The tractor belonged to Thomas, who was doing business as T & T Trucking. The trailer hitched to Thomas's tractor was filled with logs from timber harvester Terrell Enterprises, Inc. Thomas was renting the trailer from Terrell Enterprises.

Johnny Johnson's adult children, Mark Johnson and Paul Johnson, filed this wrongful death suit, naming among other defendants: (i) Thomas; (ii) Carl Anthony Thomas d/b/a T & T Trucking; and (iii) Occidental, the provider of insurance coverage for the carrier operations of Thomas d/b/a T & T Trucking. Occidental was named pursuant to OCGA § 46-7-12 (c), which is part of the Motor Carrier Act.[3]

OCGA § 46-7-12 (c) states, "It shall be permissible under this article for any person having a cause of action arising under this article to join in the same action the motor carrier and the insurance carrier, whether arising in tort or contract." "Since the direct action statute is in derogation of common law, its terms require strict compliance."[4] "The purpose of permitting joinder of the [i]nsurance [c]ompany in a claim against [a] common carrier is to further the policy of the Motor Carrier Act, that is, to protect the public against

---

[1] OCGA § 9-11-56 (c); *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004).

[2] *Latson*, supra.

[3] See generally *Andrews v. Yellow Freight System*, 262 Ga. 476 (412 SE2d 712) (1992) (referring to OCGA § 46-7-1 et seq. as the "Motor Carrier Act").

[4] *Jackson v. Sluder*, 256 Ga. App. 812, 814 (1) (569 SE2d 893) (2002).

injuries caused by the motor carrier's negligence."[5]

> Stated another way, the purpose of the insurance is not for the benefit of the insured motor common carrier but for the sole benefit of those who may have a cause of action for damages for the negligence of the motor common carrier, making the insurance policy in the nature of a substitute surety bond which creates liability in the insurer regardless of the insured's breach of the conditions of the policy.[6]

"The intent of this state's motor carrier laws is that the insurer is to stand in the shoes of the motor carrier and be liable in any instance of negligence where the motor carrier is liable."[7]

Occidental argued on motion for summary judgment that it was not subject to direct suit, citing the exemption in OCGA § 46-1-1 (9) (C) (x), which excludes from the terms "motor contract carrier" and "motor common carrier":

> *Motor vehicles* engaged exclusively in the transportation of agricultural or dairy products, or both, between farm, market, gin, warehouse, or mill, whether such motor vehicle is owned by the owner or producer of such agricultural or dairy products or not, so long as the title remains in the producer. . . . [T]he term "agricultural products" in- cludes . . . timber or logs being hauled by the owner thereof or the owner's agents or employees between forest and mill or primary place of manufacture.[8]

> The burden of proof as to whether this exemption is applicable lies with the party claiming it, and there is no burden on the opposing party to prove that [the motor vehicle] is not within the exemption. Although at summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case, here [Occidental] has the burden of proof [with respect to the exemption] and

---

[5] *Andrews*, supra (citations omitted).

[6] *Ross v. Stephens*, 269 Ga. 266, 267 (496 SE2d 705) (1998) (citation and punctuation omitted).

[7] *Miller v. Harco Nat. Ins. Co.*, 274 Ga. 387, 391 (3) (552 SE2d 848) (2001) (citations and punctuation omitted).

[8] (Emphasis supplied.)

cannot merely rely upon the absence of evidence in the record disproving that the exemption applies.[9]

The question on appeal is whether Occidental carried its burden of showing that the "motor vehicle" at issue in the collision was exclusively engaged in the transportation of logs.

In this context, this court has accepted "exclusively" to mean: "Apart from all others; only; solely; substantially all or for the greater part. To the exclusion of all others; without admission of others to participation; in a manner to exclude."[10] It is undisputed that Thomas had used his tractor exclusively to haul Terrell Enterprises' trailers containing logs for only the several weeks preceding the collision. As Occidental concedes in its appellate brief, "It is also undisputed that before Thomas began exclusively hauling logs for Terrell Enterprises, Thomas did use the tractor portion of the incident tractor-trailer to pull other trailers that contained non-exempt commodities." Because Occidental's insured's motor vehicle (the tractor) was thus not used exclusively to transport logs, Occidental failed to meet its burden of showing that its insured carrier fell within the cited exemption such that it was not subject to liability under the direct action statute.[11]

In claiming otherwise, Occidental has taken issue with the term "motor vehicle" as used in the exemption. Occidental maintains that "motor vehicle" should turn on the particular category of vehicle involved in the underlying incident. In this case, Occidental argues, the involved "motor vehicle" is more particularly categorized as a "tractor-trailer," comprised of both the tractor owned by Thomas and the trailer rented by Thomas for the purpose of hauling logs. Citing OCGA § 46-1-1 (18),[12] it asserts, "The definition of 'vehicle' found in the definitions section of the exemptions to the direct action statute expressly includes trailers." Claiming there was evidence

---

[9] *Jarrard v. Clarendon Nat. Ins. Co.*, 267 Ga. App. 594, 595 (600 SE2d 689) (2004) (citations and punctuation omitted); see *Ga. Cas. &c. Co. v. Jernigan*, 166 Ga. App. 872, 874 (1) (305 SE2d 611) (1983).

[10] *Jarrard*, supra (citation omitted); see *Ga. Cas. &c. Co.*, supra at 875.

[11] See *Jarrard*, supra at 596 (evidence of what the insured was hauling on the day of the accident failed to meet burden of showing that the insured vehicle was used exclusively to transport exempt products); *Smith v. Commercial Transp.*, 220 Ga. App. 866, 868-869 (3) (470 SE2d 446) (1996) (evidence that truck was hauling an exempt product on the day of the accident was insufficient to show that it was used exclusively for that purpose). Accord *Ga. Cas. &c. Co.*, supra at 874-875 (rejecting insurance company's argument that, given the circumstances at the time of the collision, an exemption applied).

[12] Pursuant to this Code provision, " 'Vehicle' or 'motor vehicle' means any vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof, determined by the state revenue commissioner [formerly determined by the Department of Motor Vehicle Safety]."

that Terrell Enterprises' log trailers had no practical use other than hauling logs, Occidental posits that the "tractor-trailer" involved in the underlying collision *had* been used exclusively for hauling logs, an exempt product. Occidental claims that its position is supported by *Jarrard v. Clarendon Nat. Ins. Co.*[13]

The trial court correctly rejected Occidental's position. The term "motor vehicle" cannot be considered in isolation and then interpreted in a way that ignores the overall statutory scheme, as Occidental attempts to do.[14] Rather, the term must be considered within the context of the exemption statute, which in turn,

> must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.[15]

We have held that the exemptions under the statutory scheme presuppose that the carrier *otherwise* would be a "motor contract carrier" or "motor common carrier," as those terms are defined in OCGA § 46-1-1 (9).[16] That is, even where carriers fall within the general definitions of OCGA § 46-1-1 (9), they may nevertheless be

> exempt from that status by virtue of subparagraph (C). The statute accomplishes this exemption for certain carriers by *narrowly* defining the types of goods that will qualify the *carrier's motor vehicles* for the exemption. . . . An exemption of carriers of such products is to be taken as an exemption of the products themselves, and not of the carrier. This is a reasonable classification in favor of the producer, which will enable movement of the products over the highways. . . .[17]

---

[13] Supra.

[14] See *Ga. Emission Testing Co. v. Jackson*, 259 Ga. App. 250, 253 (576 SE2d 642) (2003).

[15] *Pafford v. Biomet*, 264 Ga. 540, 542 (1) (448 SE2d 347) (1994) (citation omitted).

[16] See *Ga. Cas. &c. Co.*, supra at 874; see also OCGA § 46-7-12 (c) (providing for joinder under this article of the motor carrier and the insurance carrier); see further OCGA § 46-1-1 (9) (A) (defining "motor contract carrier" as "every person, except common carriers, owning, controlling, operating, or managing any motor propelled vehicle including the lessees or trustees of such persons or receivers appointed by any court used in the business of transporting persons or property for hire over any public highway in this state and not operated exclusively within the corporate limits of any city"), 46-1-1 (9) (B) (defining "motor common carrier," as "every person owning, controlling, operating, or managing any motor propelled vehicle, and the lessees, receivers, or trustees of such person, used in the business of transporting for hire of persons or property, or both, otherwise than over permanent rail tracks, on the public highways of Georgia as a common carrier").

[17] *Ga. Cas. &c. Co.*, supra at 873-874 (citations omitted; emphasis supplied).

*LAW LIBRARY

We are guided by rules of statutory construction, give deference to the policy of the Motor Carrier Act of protecting the public against injuries caused by the motor carrier's negligence, and recognize the import of the carrier's insurance policy. Accordingly, we hold that in this case "motor vehicle" as used in the cited exemption requires separate consideration of the use of the *carrier's* "motor vehicle."[18] We discern no legislative intent that the exemption's use of the term "motor vehicle" be interpreted, as Occidental urges, so as to instantly change a motor carrier's statutorily nonexempt status merely by hitching to the carrier's motor propelled vehicle another entity's trailer of exempt products.

Our construction of "motor vehicle" accords with existing authority. We have consistently rejected the argument that a carrier's statutorily exempt status should change based upon the load the carrier was hauling at a given time. For example, in *Smith v. Commercial Transp.*,[19] similar to here, the carrier's insurer contended that it could not be joined as a party because its insured was not a motor common carrier at the time of the accident.[20] We explained:

> While [the insured carrier] was hauling [exempt products] on the occasion of this accident, it frequently hauled other types of loads which would not be exempt. . . . It would soon become unworkable to change statutory categorization with each change of load. Thus, under these circumstances, we conclude that [the insured] could not be considered a carrier engaged in an exempt operation despite its cargo of [exempt products] at the time of the accident.[21]

Although couched as a matter of statutory construction, Occidental's claim is essentially the same as that in *Smith*: the carrier was hauling (a trailer of) exempt products at a given time; the carrier therefore fell within the exemption. But given the undisputed evidence in this case that Thomas's motor vehicle (the tractor) had not been engaged exclusively in the transportation of logs, Thomas was not an exempt motor carrier, despite having hauled only trailers

---

[18] See id. Accord *Morgan Driveaway, Inc. v. Canal Ins. Co.*, 266 Ga. App. 765, 768-769 (2) (598 SE2d 38) (2004) (reviewing whether *carrier's* dump truck was exempt from general definition of "motor common carrier" and "motor contract carrier"); *Ga. Cas. &c. Co.*, supra at 875 (reviewing whether *carrier's* unloaded truck was exempt from general definition of "motor contract carrier").

[19] Supra.

[20] Id. at 868 (3).

[21] Id. at 869.

of logs during the several weeks preceding the collision.

Finally, contrary to Occidental's claim, our decision in *Jarrard*[22] does not provide for an outcome in its favor. It is true that, in considering whether the same exemption applied to the carrier such that the insurer could not be directly sued, we referred to the "motor vehicle" involved in the underlying accident as a "tractor-trailer."[23] But as the factual recitation of that case pertinently sets forth, at the time of the accident, the insurance company provided liability insurance to the carrier, which owned the entire "tractor-trailer."[24] Moreover, the statutory construction question raised in this appeal was neither presented nor reached in that case.

The trial court properly denied Occidental's motion for summary judgment because the insurance company failed to show that the cited exemption applied with respect to its insured carrier, Carl Anthony Thomas d/b/a T & T Trucking.

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED MARCH 8, 2010.

*Mozley, Finlayson & Loggins, Brian J. Duva, Andrew M. Capobianco, Ashley B. Fournet,* for appellant.

*Strawinski & Stout, James S. Strawinski, Ben C. Brodhead III,* for appellees.

---

[22] Supra.

[23] See id. at 594.

